### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

SHELDON LAMONT JACKSON,

        Petitioner,

v.                              Case No.: 3:20-cv-1149-MMH-PDB
                                           3:15-cr-185-MMH-PDB

UNITED STATES OF AMERICA,

        Respondent.

_____

### ORDER

Petitioner Sheldon Lamont Jackson moves to vacate his conviction and sentence under 28 U.S.C. § 2255. (Civ. Doc. 1, § 2255 Motion.)[1] Jackson pled guilty to one count of possession of a firearm by a convicted felon and the Court sentenced him to a term of imprisonment of 15 years under the Armed Career Criminal Act (ACCA). See 18 U.S.C. §§ 922(g)(1), 924(e). Jackson challenges his ACCA sentence based on the ineffective assistance of counsel and attacks his § 922(g) conviction based on Rehaif v. United States, 139 S. Ct. 2191 (2019). The government responded in opposition (Civ. Doc. 4, Response) and Jackson replied (Civ. Doc. 5, Reply). Thus, the case is ripe for a decision.

---

[1]      "Civ. Doc. ___" refers to docket entries in the § 2255 case, No. 3:20-cv-1149-MMH-PDB. "Crim. Doc. ___" refers to docket entries in the criminal case, No. 3:15-cr-185-MMH-PDB.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is unnecessary to resolve the motion. No evidentiary hearing is required because Jackson's allegations are affirmatively contradicted by the record, patently frivolous, or even assuming the facts he alleges are true, he still would not be entitled to relief. Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); see also Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

## I.    Background

In 2015, a federal grand jury returned an indictment charging Jackson with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Crim. Doc. 1, Indictment.) Jackson pled guilty to the charge pursuant to a written Plea Agreement. (Crim. Doc. 86, Plea Agreement; Crim. Doc. 124, Plea Transcript.) In doing so, he admitted that on January 25, 2015, he was driving a vehicle carrying two passengers when a Jacksonville Sheriff's officer lawfully stopped the vehicle. Plea Tr. at 35. During

---

[2]    Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[3]    The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

a consensual search of the car, the officer found a loaded handgun underneath the driver's seat. Id. Jackson denied ownership of the gun and said the car was registered to a family member, but he admitted to the officer he was the primary driver of the car. Id. at 35–36. Later, the two passengers and the registered owner of the car testified before a grand jury that they did not own the gun and that Jackson was the car's primary driver. Id. at 36. One passenger stated that she knew the gun belonged to Jackson because she had seen him with it on at least two previous occasions. Id. She also testified that, as the traffic stop was unfolding, Jackson tried to pass her the gun but she pushed it away. Id. Additionally, a recorded jail call captured a conversation in which one of the passengers questioned why Jackson brought the gun with him and Jackson responded that he thought she knew he had the gun. Id. at 36–37. Jackson also admitted that he knowingly possessed the firearm, id. at 39, and that before January 25, 2015, he had been convicted of several felonies in the State of Florida, id. at 37–38. The prior convictions were (1) possession with intent to sell cocaine in 1995; (2) possession with intent to sell cocaine in 1996; (3) possession of cocaine in 2000; (4) possession of cocaine in 2000; (5) possession of cocaine and resisting an officer with violence in 2001; (6) possession of cocaine in 2003; and (7) possession of cocaine and fleeing or attempting to elude an officer in 2005. Id. at 37–38.

The Magistrate Judge who presided over the plea colloquy reported that "[a]fter cautioning [Jackson] and examining him under oath concerning each Rule 11 matter, I found that his plea was intelligently, knowingly, and voluntarily made, and that the facts that he admitted establish the elements of the charged offense." (Crim. Doc. 87, Report and Recommendation Concerning Guilty Plea.) On March 14, 2017, the Court accepted Jackson's plea and adjudicated him guilty. (Crim. Doc. 89, Acceptance of Plea.)

According to the Presentence Investigation Report (PSR), Jackson qualified for an enhanced sentence under the ACCA based on his 1995 and 1996 convictions for possession with intent to sell cocaine, in violation of Florida Statutes section 893.13(1)(a)1, and his 2001 conviction for resisting an officer with violence, in violation of Florida Statutes section 843.01. (See Crim. Doc. 92, PSR ¶¶ 23–24.) The probation officer determined that Jackson's advisory guidelines sentencing range was 188 to 235 months' imprisonment, based on a total offense level of 33 and a Criminal History Category of IV. Id. ¶¶ 16–27, 51, 100.[4]

---

[4]    The probation officer included a two-level enhancement for obstruction of justice because Jackson tried to influence a grand jury witness's testimony. PSR ¶¶ 13, 21. The probation officer also did not include a two-level reduction for acceptance of responsibility. After hearing testimony from the grand jury witness and the parties' arguments, the Court upheld the obstruction-of-justice enhancement but gave Jackson a two-level reduction for acceptance of responsibility. (Crim. Doc. 113, Sentencing Transcript at 6–43.) Jackson's resultant guidelines range was 180 to 188 months' imprisonment. See id. at 35, 49.

At the sentencing hearing, Jackson objected to the finding that his prior conviction for resisting an officer with violence qualified as a violent felony under the ACCA. (Crim. Doc. 113, Sentencing Transcript at 43–45; see also Crim. Doc. 100, Jackson's Sentencing Memorandum.) The Court overruled Jackson's objection, concluding that under United States v. Romo-Villalobos, 674 F.3d 1246 (11th Cir. 2012), and United States v. Hill, 799 F.3d 1318 (11th Cir. 2015), resisting an officer with violence under Florida law is categorically a violent felony under the ACCA's elements clause, 18 U.S.C. § 924(e)(2)(B)(i). Sentencing Tr. at 47–49. After confirming that Jackson had the prior convictions to qualify as an armed career criminal, id. at 51–52, the Court sentenced him to the mandatory minimum term of 180 months in prison, followed by two years of supervised release, id. at 57. (See also Crim. Doc. 102, Judgment; Crim. Docs. 101-1 through 101-3, Gov't Sentencing Exhibits, Certified Copies of Judgments of Prior Convictions.)

Jackson appealed his sentence, arguing that his prior conviction for resisting an officer with violence did not count as a violent felony under the ACCA's elements clause because the ACCA and Florida Statutes section 843.01 require different mens rea elements and section 843.01 does not require the necessary force. United States v. Sheldon Jackson, 736 F. App'x 825, 827 (11th Cir. 2018). The Eleventh Circuit rejected those arguments based on its decisions in Romo-Villalobos, Hill, and United States v. Joyner, 882 F.3d 1369 (11th Cir.

2018). <u>Sheldon Jackson</u>, 736 F. App'x at 827–28. As such, the Eleventh Circuit affirmed Jackson's conviction and sentence. <u>Id.</u> at 828.

Jackson petitioned the United States Supreme Court for certiorari review and the Supreme Court denied his petition. <u>Sheldon Jackson v. United States</u>, 140 S. Ct. 137 (2019). This § 2255 Motion timely followed. <u>See</u> § 2255 Motion at 13; <u>see also</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (prison mailbox rule).

## II.  Discussion

Under Title 28, United States Code, § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. <u>United States v. Addonizio</u>, 442 U.S. 178, 184–86 (1979); <u>Spencer v. United States</u>, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). The Supreme Court has recognized that a

petitioner's claim that he received ineffective assistance of counsel in violation of the Sixth Amendment is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether the petitioner has satisfied the first requirement, that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, given all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Scott v. United States, 890 F.3d 1239, 1258 (11th Cir. 2018) (internal quotation marks and citation omitted). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To satisfy the second requirement, that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)).

In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also Beeman v. United States, 871 F.3d 1215, 1221–23 (11th Cir. 2017). Moreover, a § 2255 movant is not entitled to a hearing, much less relief, "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

**A. Ground One**

The ACCA mandates the imposition of a minimum sentence of 15 years in prison for anyone who possesses a firearm after having been convicted three or more times "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (2015). Jackson alleges that his sentencing counsel, Assistant Federal Defender Mark Rosenblum, gave ineffective assistance by failing to contest whether his prior convictions for possession with intent to sell cocaine qualified as ACCA "serious

drug offenses." § 2255 Motion at 4; Reply at 1–3. Jackson argues that a state drug conviction can qualify as a "serious drug offense" only if it involved a substance prohibited under the federal Controlled Substances Act (CSA). See Reply at 1–3. But Jackson contends there was no finding that his prior convictions involved a substance listed in section 102 of the CSA (codified at 21 U.S.C. § 802). § 2255 Motion at 4.

The government argues that Jackson's claim is meritless because in United States v. Smith, 775 F.3d 1262, 1268 (11th Cir. 2014), and Shular v. United States, 140 S. Ct. 779, 782 (2020), the Eleventh Circuit and the Supreme Court determined that a cocaine-related violation of Florida Statutes section 893.13(1)(a) is categorically a "serious drug offense." Response at 5–7. Jackson counters that Smith and Shular do not foreclose his argument because those cases dealt only with the "conduct" component of the ACCA's definition of a "serious drug offense." In contrast, Jackson says, his argument deals with whether the state drug offense involved a substance that corresponds to one listed in the federal CSA schedules. Reply at 1–2.

Jackson is correct that Smith and Shular do not foreclose his argument, which is that his prior state convictions cannot be serious drug offenses unless they involved a substance banned under the federal CSA schedules. See United States v. Eugene Jackson, 55 F.4th 846, 851–54 (11th Cir. 2022) ("Eugene Jackson II"). And Jackson is also correct that his prior state convictions are

"serious drug offenses" only if they involved a controlled substance "as defined in section 102 of the Controlled Substances Act." 18 U.S.C. § 924(e)(2)(A)(ii). But Jackson's argument <u>is</u> foreclosed by the Eleventh Circuit's recent decision in <u>Eugene Jackson II</u>, holding that "ACCA's 'serious drug offense' definition incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense." <u>Eugene Jackson II</u>, 55 F.4th at 849. And Jackson fails to identify what formulation of cocaine his 1995 and 1996 convictions could have involved that was not on the federal CSA schedules when he was convicted of those prior offenses. Thus, Jackson's claim ultimately fails on the merits: his prior convictions are "serious drug offenses" and his counsel was not ineffective.

To start with, this claim requires the Court to determine whether Jackson's 1995 and 1996 convictions for possession with intent to sell cocaine met the ACCA's definition of a "serious drug offense." If they did, Jackson's counsel could not have been ineffective for failing to raise an objection. To determine if the prior convictions were "serious drug offenses," the Court uses the "categorical approach." <u>United States v. Conage</u>, 976 F.3d 1244, 1250 (11th Cir. 2020). Under that approach, the Court looks to the state offense of which the defendant was convicted and identifies the elements of that crime. <u>Id.</u> The categorical approach requires the Court to ignore the facts of the prior conviction and consider only the elements. <u>Id.</u> The Court then compares the

elements of the state offense with the components of the ACCA's definition of a "serious drug offense." See id. A conviction is a "serious drug offense" only if the state statute under which the defendant was convicted defines the offense as narrowly as (or more narrowly than) the ACCA's definition of a "serious drug offense." Id.

As relevant here, the ACCA defines "serious drug offense" to mean "an offense under State law, involving … distributing, or possessing with intent to … distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (2015). This definition requires a state crime to meet three criteria:

> First, the prior state offense must involve certain conduct: "manufacturing, distributing, or possessing with intent to manufacture or distribute." Second, that conduct must involve "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802))." And third, that conduct involving a controlled substance must be punishable by a maximum term of imprisonment of at least ten years.

Eugene Jackson II, 55 F.4th at 854 (internal citations omitted). Jackson's claim focuses on the second component, which provides that "an offense under State law" is a serious drug offense only if it involves a controlled substance "as defined in section 102 of the Controlled Substances Act."[5]

---

[5]   Section 102 of the Controlled Substances Act, codified at 21 U.S.C. § 802, defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this title [21 USCS § 812]." 21 U.S.C. § 802(6).

But the federal CSA schedules are ever-changing, with substances being added and removed regularly. So in Eugene Jackson II, the Eleventh Circuit had to address which version of the federal CSA schedules governs in determining whether a prior state drug conviction is an ACCA-qualifying offense: the version in effect when the defendant was convicted of the prior state offense or the version in effect when he committed his federal firearm offense. 55 F.4th at 849. Relevant to Eugene Jackson II, the United States Attorney General removed ioflupane (a cocaine analogue) from the federal CSA schedules in September 2015. Id. at 851 & n.4. The defendant, Eugene Jackson, had been convicted of cocaine-related offenses under Florida Statutes section 893.13(1)(a) in 1998 and 2004, when ioflupane was a controlled substance under both Florida and federal law, but he committed the federal firearm offense in 2017, after ioflupane had been removed from the federal CSA schedules. See id. at 850–51 & nn.3–4. The Eleventh Circuit held that the "ACCA's 'serious drug offense' definition incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense." Id. at 849. The Supreme Court's decision in McNeill v. United States, 563 U.S. 816 (2011), required this conclusion, the court said, "(1) because using the federal controlled-substances schedules in effect at the time the defendant committed the federal firearm offense would 'erase an earlier [state] conviction for ACCA purposes,' in violation of McNeill's reasoning, and (2) because of the way

McNeill informs our reading of ACCA's structure." Eugene Jackson II, 55 F.4th at 856 (internal citation omitted). The ACCA's structure, the court said, requires a "backward-looking" approach in determining whether a "previous conviction" qualifies as a "violent felony" or "serious drug offense." Id. at 856–58. Applying these principles, the Eleventh Circuit concluded that the defendant's 1998 and 2004 cocaine-related convictions were serious drug offenses because, while those offenses presumably involved ioflupane, ioflupane was still a federally controlled substance in 1998 and 2004. Id. at 861.

Here, the crucial fact is that Jackson was convicted of his ACCA-qualifying drug offenses—both involving the possession with intent to sell cocaine—in 1995 and 1996. PSR ¶¶ 33, 34. At that time, ioflupane was a controlled substance under both Florida law and the federal CSA schedules.[6] As a result, when Jackson was convicted of the prior drug offenses in 1995 and 1996, they categorically involved a substance that corresponded to a federally controlled substance.

Indeed, at sentencing, the government introduced certified copies of the judgments of the prior convictions, which showed that Jackson was convicted of possession with intent to sell cocaine in 1995 and 1996, in violation of Florida

---

[6]     The Court focuses on ioflupane because Jackson identifies no other possible discrepancy—or any specific discrepancy at all—between the federal CSA Schedules and Florida's Controlled Substances Schedules. See § 2255 Motion at 4; Reply at 1–3.

Statutes section 893.13(1)(a)1. (Crim. Doc. 101-1, Gov't Sentencing Exhibit 1; Crim. Doc. 101-2, Gov't Sentencing Ex. 2.) When Jackson committed these offenses, Florida law made it "unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. § 893.13(1)(a) (1995).[7] If the offense involved a substance listed in Florida Statutes section 893.03(2)(a), the offense was a second-degree felony, id. § 893.13(1)(a)1, punishable by up to 15 years in prison, id. § 775.082(3)(d). Schedule II of Florida's Controlled Substance Schedules listed "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine." Id. § 893.03(2)(a)4 (1995). That description included ioflupane. Eugene Jackson II, 55 F.4th at 851 n.3. Because different formulations of the same substance (e.g., cocaine versus ecgonine) are only "alternative means" of committing the same crime under Florida law, a court must presume that the offense involved only the least culpable formulation. See id. at 861 n.9. So in Jackson's case, the Court presumes that his 1995 and 1996 convictions for possession with intent to sell cocaine involved ioflupane.

But as noted above, the Attorney General did not remove ioflupane from the federal CSA Schedules until 2015. Jackson was convicted of the possession

---

[7]    In all pertinent respects, Florida law was identical in 1995 and 1996. For ease of reference, the Court refers to the 1995 version of the Florida Statutes that governed Jackson's prior cocaine convictions.

with intent to sell cocaine in 1995 and 1996. And the Eleventh Circuit held in

<u>Eugene Jackson II</u> that it is the version of the federal CSA schedules in effect

when the defendant was convicted of his prior state drug offense that governs.

55 F.4th at 849. When Jackson was convicted of the prior state drug offenses,

Schedule II of the federal CSA schedules included:

> **(4)** coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.

21 U.S.C. § 812(c), Schedule II(a)(4) (1995); <u>accord</u> 21 CFR § 1308.12(b)(4)

(1995). In 1995 and 1996, "'ioflupane was, by definition, a schedule II controlled

substance because it is derived from cocaine via ecgonine, both of which are

schedule II controlled substances.'" <u>Eugene Jackson II</u>, 55 F.4th at 851 n.4

(quoting 80 Fed. Reg. 54715).[8] Because the federal CSA Schedules still included

ioflupane when Jackson was convicted of the possession with intent to sell

---

[8]     After September 11, 2015, 21 CFR § 1308.12(b)(4) encompassed:

> **(4)** Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include:

> > (i)      Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or
> >
> > (ii)     [$^{123}$I] ioflupane.

21 CFR § 1308.12(b)(4) (2016).

cocaine in 1995 and 1996, those crimes categorically involved "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." 18 U.S.C. § 924(e)(2)(A)(ii). And Jackson identifies no other substance that his prior cocaine convictions could have involved that was not included in the version of Schedule II in effect in 1995 or 1996. Nor does Jackson contest whether his prior cocaine convictions satisfied the other two components of a "serious drug offense," i.e., that they involved distributing or possessing with intent to distribute and that the offenses were punishable by more than 10 years in prison. See 18 U.S.C. § 924(e)(2)(A)(ii).

As a result, Jackson's 1995 and 1996 convictions for possession with intent to sell cocaine properly qualified as ACCA "serious drug offenses." The government provided copies of the prior judgments at sentencing, which established the fact and nature of the drug convictions. See Sentencing Tr. at 51–52; (see also Crim. Docs. 101-1 & 101-2, Gov't Sentencing Exhibits 1 & 2.) Because Jackson does not identify how defense counsel could have successfully contested whether these qualified as "serious drug offenses," he fails to allege facts showing that defense counsel was ineffective. See Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

Moreover, the recent decision in Eugene Jackson II by itself cuts against finding counsel ineffective. Six months before the latest decision in that case,

the same panel held that due process requires courts "to use the iteration of the Controlled Substances Act Schedules incorporated into § 924(e)(2)(A)(ii)'s definition of 'serious drug offense' in effect when [the defendant] possessed the firearm that undergirds his federal conviction." United States v. Eugene Jackson, 36 F.4th 1294, 1300 (11th Cir. 2022) ("Eugene Jackson I"), superseded by Eugene Jackson II, 55 F.4th 846.[9] But then the court vacated that opinion and ordered supplemental briefing to address the Supreme Court's decision in McNeill. In light of McNeill, the panel reversed course and concluded that it is "the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense" that governs after all. Eugene Jackson II, 55 F.4th at 849. Judge Rosenbaum flagged a circuit split on the issue, noting that the Third, Fourth, Eighth, and Tenth Circuits "reach[ed] the opposite conclusion and instead look to the federal controlled-substances schedules in effect at the time of the federal firearm offense." Id. at 862 (Rosenbaum, J., concurring) (citations omitted). Indeed, as Judge Rosembaum observed, "[e]ven 'judges struggle' to resolve [statutory] questions" about the ACCA. Id.

Before Eugene Jackson II, it was unsettled in the Eleventh Circuit which version of the federal CSA schedules governs the determination of whether a prior state conviction is an ACCA serious drug offense: the one in effect when

---

[9]    Under that (now-abandoned) holding, Jackson still would not have been entitled to relief because he committed the federal felon-in-possession offense in January 2015, eight months before the Attorney General removed ioflupane from the federal CSA schedules.

the defendant was convicted of the prior state offense, the one in effect when the defendant committed the federal felon-in-possession offense, or the one in effect at some other time. But the Eleventh Circuit has "held many times that reasonably effective representation cannot and does not include a [r]equirement to make arguments based on predictions of how the law may develop." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (quotation marks omitted); see also Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1334 (11th Cir. 2016) (concluding that appellate counsel was not ineffective for failing to challenge a manslaughter jury instruction where "the law was at best unsettled" when counsel filed the appellate briefs (collecting cases)). The Eleventh Circuit has "a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, E., J., concurring in denial of rehearing en banc). Thus, Jackson's allegations fail to show that his counsel performed deficiently by failing to challenge whether his prior Florida convictions for possessing cocaine with intent to sell were ACCA serious drug offenses. Relief on the claim in Ground One will be denied.

**B. Ground Two**

Next, Jackson asserts that the Indictment "failed to charge or state a[n] offense," in violation of Jackson's right to due process. § 2255 Motion at 5. He

contends that the Indictment "failed to state each material element of the charged offense" under 18 U.S.C. § 922(g)(1). Id. Although he does not specify which element the Indictment failed to include, he argues in his Reply that the Indictment failed to allege that he knew he was a felon. Reply at 3–6.

The government (accurately) construes Jackson's claim as alleging that the Indictment was defective under Rehaif v. United States, 139 S. Ct. 2191 (2019), because it failed to allege that Jackson knew of his felon status. Response at 7. The government argues that the claim is procedurally defaulted, id. at 7–10, and was waived by Jackson's guilty plea, id. at 10–12.

In Rehaif, the Supreme Court held that to convict a defendant of unlawful possession of a firearm, the government must prove not only "that the defendant knew he possessed a firearm," but also that he knew he belonged to a category of persons that § 922(g) prohibits from possessing a gun. 139 S. Ct. at 2194, 2200. The Supreme Court reasoned that since § 924(a)(2) provides that anyone who "knowingly violates" § 922(g) will be fined or imprisoned for up to 10 years, the word "knowingly" applies to the status element as well as the possession element. Rehaif, 139 S. Ct. at 2194, 2195–96. In so holding, the Supreme Court overturned the law of the Eleventh Circuit (and several other circuits), which had held that the government did not have to prove the defendant knew of his prohibited status. See, e.g., United States v. Melvin Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997).

Here, the Indictment alleged that Jackson "did knowingly possess, in and affecting commerce, a firearm, that is, a Glock, model 19, 9 mm pistol … after having previously been convicted of crimes punishable by imprisonment for a term exceeding one year." Indictment at 1. The Indictment listed Jackson's nine prior felony convictions and cited 18 U.S.C. § 922(g)(1) and § 924(e), but it did not separately allege that Jackson knew he was a felon. See id. at 1–2. As a result, the Indictment arguably contained a Rehaif error.

Although Jackson did not raise the Rehaif error on direct appeal, the Court need not decide whether he procedurally defaulted this claim or whether he waived it by pleading guilty. In all events, the claim fails under the harmless error standard applicable on collateral review. See Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993); see also Ross v. United States, 289 F.3d 677, 682 (11th Cir. 2002) ("In this Circuit, we apply the Brecht harmless error standard to the habeas review of federal court convictions, as well as state court convictions." (citation omitted)). On collateral review, relief is proper only if the Court has "grave doubt" about whether an error had a "substantial and injurious effect or influence" on the outcome. Granda v. United States, 990 F.3d 1272, 1292 (11th Cir. 2021). "There must be more than a reasonable probability that the error was harmful…. [T]he court may order relief only if the error resulted in actual prejudice." Id. (internal quotation marks and citations omitted). Obtaining collateral relief requires a prisoner to "clear a significantly higher hurdle than

would exist on direct appeal" under the plain-error standard. <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982). So if a claim would fail under plain-error review, it would necessarily fail under <u>Brecht</u>'s harmless-error standard.

Notably, a <u>Rehaif</u> error is not structural error and does not require a presumption of prejudice. The Supreme Court and the Eleventh Circuit have held that <u>Rehaif</u> errors—whether in the indictment, a plea colloquy, or jury instructions—are nonstructural errors subject to some form of harmless-error review. <u>Greer v. United States</u>, 141 S. Ct. 2090, 2100 (2021) (concluding that "<u>Rehaif</u> errors fit comfortably within the 'general rule' that 'a constitutional error does not automatically require reversal of a conviction,'" and applying plain-error test to unpreserved <u>Rehaif</u> claims on direct appeal); <u>Seabrooks v. United States</u>, 32 F.4th 1375, 1384–85 (11th Cir. 2022) (on collateral review, applying <u>Brecht</u>'s harmless-error standard to a <u>Rehaif</u> claim about jury instructions); <u>United States v. Leonard</u>, 4 F.4th 1134, 1144 (11th Cir. 2021) (on direct review, applying <u>Chapman</u>[10] harmless-error standard to a preserved <u>Rehaif</u> error in the indictment).[11] In determining whether a <u>Rehaif</u> error

---

[10]   <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967).

[11]   "Under the plain error standard, 'there must be (1) error, (2) that is plain, and (3) that affects [the defendant's] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>United States v. Moore</u>, 954 F.3d 1322, 1329 (11th Cir. 2020) (citation omitted).

   Under <u>Chapman</u>'s more defendant-friendly harmless error standard, which applies to errors that were preserved in the trial court, "the government bears the burden of showing

affected a defendant's substantial rights, a court may examine "the <u>entire</u> record," including the PSR, "not just the record from the <u>particular proceeding</u> where the error occurred." <u>Greer</u>, 141 S. Ct. at 2098 (emphasis in original).

Jackson argues that the Indictment failed to charge each element of an offense under § 922(g)(1) because it did not allege that he knew he was a felon. To obtain relief on this claim, Jackson "must show [more than] a reasonable probability that, but for the error, he would not have entered the [guilty] plea." <u>United States v. Bates</u>, 960 F.3d 1278, 1296 (11th Cir. 2020) (internal quotation marks and citation omitted); <u>Granda</u>, 990 F.3d at 1292 (on collateral review, a petitioner must show "more than a reasonable probability that the error was harmful."). On this record, Jackson fails to make that showing. The Eleventh Circuit has held, on plain-error review, that the same defect did not affect the substantial rights of similarly situated defendants who pled guilty. <u>See</u>, <u>e.g.</u>, <u>United States v. Dudley</u>, 5 F.4th 1249, 1266–67 (11th Cir. 2021), <u>cert. denied</u>, 142 S. Ct. 1376 (2022); <u>Bates</u>, 960 F.3d at 1295–96. Because Jackson must satisfy a standard even more demanding than plain-error review, it follows he is not entitled to relief.

Jackson "does not assert that he would have changed his decision to plead guilty had he known that the government had to prove his knowledge of his

---

that an error was 'harmless beyond a reasonable doubt.'" <u>Leonard</u>, 4 F.4th at 1144 (quoting <u>Chapman</u>, 386 U.S. at 24).

felon status." <u>Dudley</u>, 5 F.4th at 1267; § 2255 Motion at 5. Nor could he credibly say so. "At the plea hearing and at his sentencing, [Jackson] did not object to or express any confusion about the government's assertion that he was a [nine]-time convicted felon." <u>Bates</u>, 960 F.3d at 1296; <u>see also</u> Plea Tr. at 35–39; <u>see generally</u> Sentencing Tr. "Had the government been required to prove that [Jackson] knew he was a felon at the time he possessed a firearm, there is overwhelming evidence to show that it would have easily done so." <u>Bates</u>, 960 F.3d at 1296. And "[h]ad [Jackson] known that the government needed to prove that he knew he was a felon, the probability is virtually zero that it would have changed his decision to plead guilty." <u>Id.</u> (citation omitted). The fact alone that Jackson had nine prior felony convictions from seven prosecutions is powerful evidence that he knew of his status as a felon. "If a person is a felon, he ordinarily knows he is a felon," a "simple truth [that] is not lost on juries" or defendants. <u>Greer</u>, 141 S. Ct. at 2097. And "someone who has been convicted of felonies repeatedly is especially likely to know he is a felon." <u>United States v. Innocent</u>, 977 F.3d 1077, 1082 (11th Cir. 2020) (citation omitted). In addition, "serving more than a year in prison provides circumstantial evidence of knowledge of felon status." <u>Id.</u> at 1083 (citations omitted). For his 2005 convictions for possession of cocaine and fleeing or attempting to elude a police officer, Jackson was sentenced to 18 months' imprisonment and later spent more than a year in prison. PSR ¶ 42. Also, Jackson "behaved in a way that

suggested he knew he was not allowed to possess a gun." <u>Innocent</u>, 977 F.3d at 1083. Jackson admitted that during the traffic stop preceding his arrest, he (1) tried to pass the gun to one of the passengers "to avoid being found with a handgun," and (2) denied to the police officer that the gun was his. Plea Tr. at 35–36. All in all, there was overwhelming circumstantial evidence that Jackson knew he was not supposed to have a firearm. Thus, he cannot show "actual prejudice" based on the Indictment's failure to allege that he knew he was a felon or based on the plea colloquy's failure to advise him of the same.

Jackson also suggests that the Indictment failed to allege an offense against the United States because it omitted the knowledge-of-status element, making the Indictment jurisdictionally defective. <u>See</u> Reply at 3–6. But the Eleventh Circuit has repeatedly rejected that argument, holding that a <u>Rehaif</u> error in the indictment is non-jurisdictional. <u>See</u>, <u>e.g.</u>, <u>Dudley</u>, 5 F.4th at 1266–67; <u>Bates</u>, 960 F.3d at 1295; <u>Moore</u>, 954 F.3d at 1333–37.

In short, Jackson cannot show that a <u>Rehaif</u> error in the Indictment or the plea colloquy resulted in "actual prejudice" or that any <u>Rehaif</u> error in the Indictment was jurisdictional. Thus, relief on this ground will be denied.

### C. Motion to Appoint Counsel (Civ. Doc. 6)

Jackson moved the Court to appoint him counsel based on the Eleventh Circuit's now-vacated panel decision in <u>Eugene Jackson I</u>, 36 F.4th 1294. (Civ. Doc. 6, Motion to Appoint Counsel.)

The right for an indigent party to have a court-appointed attorney emanates from three different sources. First, the Fifth Amendment's Due Process Clause may provide the right when "fundamental fairness" requires it. [United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009)] (quoting Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973)). Second, the Sixth Amendment provides the right at "critical stages of a criminal prosecution," including during a first appeal. Id. (quoting Williams v. Turpin, 87 F.3d 1204, 1209 (11th Cir. 1996)). Third, a defendant has a statutory right to counsel under 18 U.S.C. § 3006A when: (1) the defendant is entitled to appointment of counsel under the Sixth Amendment to the Constitution; (2) the defendant "is under arrest, [and] such representation is required by law"; and (3) the district court determines that "the interests of justice so require" when a defendant seeks relief under 28 U.S.C. §§ 2241, 2254, or 2255. 18 U.S.C. § 3006A. The Rules Governing 2254 Cases and Section 2255 Proceedings, in turn, require counsel to be appointed for indigent parties if necessary for effective discovery or if an evidentiary hearing is warranted. Rules Governing Section 2254 Cases and Section 2255 Proceedings, Rules 6(a), 8(c).

United States v. Johnson, 842 F. App'x 402, 405 (11th Cir. 2021).

Jackson has not shown that he has a right to counsel under any of these sources. Moreover, for the reasons discussed in Ground One, Eugene Jackson I does not afford Jackson relief from his sentence. And Jackson has not shown that the facts and the law are complex or that, due to his incarceration or indigency, he cannot effectively prosecute his claims. Thus, the interests of justice do not support the appointment of counsel. 18 U.S.C. § 3006A(a)(2).

## III.   Certificate of Appealability

The undersigned concludes that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Jackson "must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

When a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

## IV.   Conclusion

Having considered each of Jackson's claims, and finding that none warrants relief under 28 U.S.C. § 2255, it is **ORDERED:**

1.  Petitioner Sheldon Lamont Jackson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2.  Jackson's Motion to Appoint Counsel (Civ. Doc. 6) is **DENIED**. The

Motion to Expedite (Civ. Doc. 7) is **DENIED AS MOOT**.

3. The Clerk will enter judgment for the United States and against Jackson, and close the file.

4. If Jackson appeals this Order, the Court denies a certificate of appealability (COA). Because this Court has determined that a COA is not warranted, the Clerk will terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed. Such termination will serve as a denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida this 17th day of March, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc 19
C:
Counsel of record
Pro se petitioner